**James WALSH Jr., Appellant,**

v.

**Donna NELSON and Verner Nelson d/b/a River Plaza Building, Appellees.**

**No. 98–2111.**

Supreme Court of Iowa.

Feb. 14, 2001.

500

Max E. Kirk of Ball, Kirk & Holm, P.C., Waterloo, for appellant.

David L. Riley of Yagla, McCoy & Riley, P.L.C., Waterloo, for appellees.

NEUMAN, Justice.

This is a declaratory judgment action to determine the parties' rights under a commercial lease. The district court held that the lease gave the lessee a one–time op-portunity for early termination, an opportunity he missed. But it also ruled that rent had been overpaid. Both the lessee and the lessors appealed and we transferred the case to the court of appeals. That court reversed the district court on the law, finding the lease ambiguous. It then went on to resolve the ambiguity in the leesee's favor.

Upon further review, we now vacate the court of appeals' decision, reverse the judgment of the district court and remand for new rulings based on the record already made.

## I. Background Facts and Proceedings.

In July 1997, plaintiff James Walsh, Jr. brought a declaratory judgment action against Donna and Verner Nelson (the Nelsons) to determine his right, as tenant, to terminate an eighteen-year commercial lease prior to the end of the lease term. The final lease, signed in 1985, was the product of four drafts and nearly eighteen months of negotiations between Walsh and the Nelsons. The negotiations concerned the amount of rent, the length of the lease, and issues involved in financing the Nelsons' restoration of the building and Walsh's eligibility for an historic building tax credit.

The lease provision in dispute is paragraph 35, titled "Modification of Term." The paragraph provides:

> This lease is terminable at tenants['] option if, *at the end of the first six year term, but not sooner,* any of the members of the Clark, Butler, Walsh & McGivern law firm are deceased or permanently retired from practice of law or are disabled. A determination of what constitutes disability for purposes of this paragraph shall be made solely by the tenant. Tenant shall give landlord 30 days notice of any intent to terminate pursuant to the provisions of this paragraph.

(Emphasis added.)

Walsh did not attempt to terminate the lease until June 1996, nearly five years

after the end of the first six-year term. Two of Walsh's partners had retired. The Nelsons, however, refused to let Walsh out of the lease, so he filed this action, contending that the language highlighted above permitted him to terminate the lease at any time after the first six years. The Nelsons argued in the district court, and urge on appeal, that the language gave Walsh only one "out"—at the end of the first six-year term, but not after.

The Nelsons also filed a counterclaim alleging that Walsh owed $51,224.85 in unpaid rent under paragraph 30 of the lease. Paragraph 30(a) set the rent for the first six years. From July 1991 until December 1994, the parties argued about the proper method for recalculating this base rent. In December 1994, they agreed that Walsh would pay $9.40 per square foot for rent up to that point in time, and would continue to pay $9.40 per square foot until the next scheduled rent adjustment on July 1, 1996, the beginning of the lease's twelfth year. The parties failed to recalculate the base rent at the beginning of the twelfth year, and Walsh continued to pay $9.40 per square foot. At trial Walsh argued that after July 1, 1996 he paid too much; the Nelsons insisted he paid too little.

The district court, after considering the evidence tendered by each party, concluded that the lease gave Walsh only one opportunity to terminate before the end of the eighteen-year term. In the court's words, "[t]he language of paragraph 35 is clear and unambiguous." The court also found that Walsh overpaid rent in the sum of $7226.34.

Walsh appealed, and we transferred the case to the court of appeals. That court reversed in part and affirmed in part. It first determined, contrary to the district court, that the termination provision of the contract was ambiguous as a matter of law. It then resolved the ambiguity in Walsh's favor and affirmed his judgment against the Nelsons for excess rental payments.

The Nelsons sought, and this court granted, further review. They claim that once the court of appeals determined the disputed lease term was ambiguous, it engaged in an improper de novo review of the record to determine the parties' intent. They also contend the court of appeals incorrectly calculated the amount of rent owed by Walsh. We shall consider the arguments in turn.

## II. Scope of Review.

Appellate review of an action for declaratory relief is determined by the manner in which the action was tried to the district court. *United Fire & Cas. Co. v. Iowa Dist. Ct.,* 612 N.W.2d 101, 103 (Iowa 2000). This case concerns an alleged ambiguity in the provisions of a lease, a matter generally resolved as a matter of law. *Hartig Drug Co. v. Hartig,* 602 N.W.2d 794, 797 (Iowa 1999). While we are not bound by the district court's legal conclusions, we are bound by its findings of fact if such findings are supported by substantial evidence in the record. *Iowa Fuel & Minerals, Inc. v. Iowa State Bd. of Regents,* 471 N.W.2d 859, 862 (Iowa 1991). An appellate court is not free to substitute its own findings of fact for those of the district court simply because the evidence supports different inferences. *Hendricks v. Great Plains Supply Co.,* 609 N.W.2d 486, 490 (Iowa 2000).

## III. Issues on Appeal.

**A. *Lease interpretation.*** The main thrust of the Nelsons' argument is that the court of appeals disregarded the applicable standard of review when it substituted its judgment for the trial court's on the question of whether paragraph 35 of the lease is ambiguous. Walsh counters that because the language of paragraph 35 is ambiguous as a matter of law, the court of appeals' use of extrinsic evidence to reverse the district court's judgment for the Nelsons was proper. Fundamental rules guide our consideration of these competing theories.

■ 1. *Applicable rules.* Because leases are contracts as well as conveyances of property, ordinary contract principles apply. *Dickson v. Hubbell Realty Co.,* 567 N.W.2d 427, 430 (Iowa 1997). Where, as here, the dispute centers on the meaning of certain lease terms, we engage in the process of *interpretation,* rather than *construction. See Fausel v. JRJ Enters., Inc.,* 603 N.W.2d 612, 618 (Iowa 1999) (interpretation is process of determining meaning of contract terms while construction is process of determining legal effect of such terms).

■ The primary goal of contract interpretation is to determine the parties' intentions at the time they executed the contract. *See Hartig Drug Co.,* 602 N.W.2d at 797. Interpretation involves a two-step process. First, from the words chosen, a court must determine "what meanings are reasonably possible." Restatement (Second) of Contracts § 202 cmt. a, at 87 (1981). In so doing, the court determines whether a disputed term is ambiguous. A term is not ambiguous merely because the parties disagree about its meaning. *Hartig Drug Co.,* 602 N.W.2d at 797. A term is ambiguous if, "after all pertinent rules of interpretation have been considered," "a genuine uncertainty exists concerning which of two reasonable interpretations is proper." *Id.*

■ Once an ambiguity is identified, the court must then "choos[e] among possible meanings." Restatement (Second) of Contracts § 202 cmt. a, at 87. If the resolution of ambiguous language involves extrinsic evidence, a question of interpretation arises which is reserved for the trier of fact. *Fausel,* 603 N.W.2d at 618.

■ As the foregoing discussion reveals, rules of interpretation are "used both to determine what meanings [of disputed terms] are reasonably possible as well as to choose among two reasonable meanings." *Hartig Drug Co.,* 602 N.W.2d at 797 (citing Restatement (Second) of Contracts § 202 cmt. a, at 87). Put another way, the disputed language and the parties' conduct must be interpreted "in the light of all the circumstances" regardless of whether the language is ambiguous. *Fausel,* 603 N.W.2d at 618.

■ This idea is expressed in Restatement (Second) of Contracts section 212 comment b:

> Any determination of meaning or ambiguity should only be made in the light of the relevant evidence of the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties. But after the transaction has been shown in all its length and breadth, *the words of an integrated agreement remain the most important evidence of intention* .

(Emphasis added.) (Citations omitted.) In short, although other evidence may aid the process of interpretation, the words of the contract remain the key to determining whether the lease terms are ambiguous.

■ 2. *Analysis.* Applying these principles to the case before us, we are convinced from the words of the contract as well as the surrounding circumstances that the meaning of paragraph 35 is ambiguous as a matter of law. It is evident from the contract language that Walsh had an option to terminate the lease at some point after the first six years but before the end of the eighteen-year term. The language "at the end" suggests that the option to terminate would occur at a specific time. The next phrase, "but not sooner," makes clear that Walsh could not terminate the lease during the first six years.

The difficulty arises in determining if "at the end ... but not sooner" means at midnight on July 1, 1991 or at some other time during or near the end of the sixth year or, as Walsh suggests, anytime thereafter. The nature of the conditions for termination—retirement, death or disability of a law partner—suggests a reasonable

need for flexibility. Such events are not within Walsh's control. If the "end of the sixth year" must be precisely determined, it could be urged that the provision gives Walsh such a limited time to exercise his options as to make it meaningless. *See Am. Soil Processing, Inc. v. Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd.*, 586 N.W.2d 325, 334 (Iowa 1998) (because agreements interpreted as a whole, interpretation that gives meaning to all terms preferred to one rendering a part unreasonable).

The circumstances surrounding Walsh's and Nelsons' agreement further support a finding of ambiguity. The context in which the lease was negotiated and signed is evidenced by multiple draft leases, correspondence between the parties concerning the lease, and each party's testimony. Each draft contained a provision allowing Walsh some option for early termination. Walsh expressed concern over the length of the lease in a letter to Nelsons' architect, a concern which Donna Nelson confirmed at trial. The letter states, in part:

> It has also been suggested that a 15 year lease is enough for historic buildings. If that is true perhaps we could work out a 15 year lease arrangement that provided us with appropriate "escape hatches" and provided you with adequate notice of our intentions so that while it would be a 15 year lease it could be flexible enough to look and act like a 5 year lease.

Walsh's claim of ambiguity is further supported by a letter to the Nelsons in which he directly addressed an earlier version of paragraph 35. He stated that he was concerned that "it was too lenient in terms of not continuing for the whole 16 years" and that the IRS would question its suitability for favorable tax treatment. Walsh went on to state that "[a]t any rate, it shouldn't affect you one way or the other," citing his understanding that the Nelsons were not concerned with the length of the lease beyond the five to six years needed for financing.

Donna Nelson countered Walsh's recollection of events by indicating that she needed a long-term lease to secure financing. While she produced no documents to support this contention, she testified that her finance company insisted on a long-term lease because she could not develop a project of this size on the basis of short-term leases.

▪ Based on this evidence of conflicting expectations, we are convinced—as was the court of appeals—that the district court erred as a matter of law when it determined paragraph 35 was unambiguous. We are further convinced, however, that the court of appeals erred when it leaped to the second step of contract interpretation—choosing among possible meanings for the ambiguous terms. Reweighing the evidence, it found that the facts supported Walsh's interpretation. In making this finding, it exceeded the limits of its appellate review. *See* 5 Am.Jur.2d *Appellate Review* § 662, at 337 (1995) ("Generally speaking, except in review of cases in equity, or matters of constitutional law, an appellate court does not reweigh the evidence presented in the court below.").

We must, therefore, vacate the decision of the court of appeals, reverse the decision of the district court, and remand to allow the district court, as the trier of fact, to interpret the contract anew based on the record already made. *See Fausel*, 603 N.W.2d at 618 ("[W]hen the meaning of an agreement depends on extrinsic evidence, a question of interpretation is left for the trier of fact...."); *see also* 17A Am.Jur.2d *Contracts* § 339, at 346 (1991) ("[I]f the language in a contract is ambiguous, evidence may be admitted as to the intent of the parties, *and the determination of the parties' intent is a question of fact.*" (Emphasis added.)).

Because the district court will be interpreting the contract on remand, we turn to the disputed issue of rent calculation under the terms of the lease.

**B.** *Rent dispute.* The Nelsons claim that both the court of appeals and the district court erred as a matter of law in determining that Walsh overpaid rent in the sum of $7226.34. The disputed figure rests on a calculation of $9.04 per square foot from July 1996 until the time Walsh filed this action. The Nelsons contend that the district court erroneously calculated the base rent under paragraph 30(b), and failed to calculate the Consumer Price Index (CPI) adjustment according to paragraph 30(c), errors the court of appeals repeated on appeal.

The thrust of Nelsons' claim is that, while the court of appeals acknowledged that paragraph 30(c) called for a rent increase at the beginning of the twelfth year based on the CPI, it found the Nelsons presented no evidence of the CPI for January 1996. It therefore affirmed the district court's calculations. Nelsons claim such a finding is not supported by the record. We agree.

Paragraph 30(d) details how rent shall be calculated after the set payments for the lease's first six years. It provides that the base rent must be recalculated at the end of the eleventh lease year to "reflect the average rate of the building excluding the athletic club" according to paragraph 30(b). The district court correctly calculated the base rent according to plaintiff's exhibit 36, titled "Rent Roll–River Plaza— 1996." This figure remains the base rent for the remainder of the lease. But in addition, starting on July 1, 1996 (the beginning of the twelfth lease year) the rent was to be increased according to a CPI adjustment provided in paragraph 30(c).

Contrary to the court of appeals' finding, the record does present evidence from which to determine the appropriate CPI adjustment. Defendant's Exhibit F, although misnumbered, shows that the CPI increase at the beginning of the twelfth lease year was 8.2%. The record reveals no objection by Walsh to this evidence. Thus, on remand, the district court should consider this evidence as it applies to the rent calculation under paragraph 30 to determine the proper rent for the twelfth lease year and thereafter.

For the reasons stated above, we vacate the decision of the court of appeals, reverse the district court and remand the case for further proceedings consistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH INSTRUCTIONS.**