# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-3228

_____

Davenport Chester, LLC

*Plaintiff - Appellant*

v.

Abrams Properties, Inc; SCIenergy, Inc.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: April 5, 2017
Filed: September 5, 2017

_____

Before WOLLMAN and LOKEN, Circuit Judges, and ROSSITER,* District Judge.

_____

LOKEN, Circuit Judge.

This is an action by landlord Davenport Chester, LLC (Chester or Landlord), against tenant Abrams Properties, Inc. (Abrams or Tenant), for breach of a terminated lease agreement and waste under Iowa law, seeking as damages reasonable costs to

_____

*The Honorable Robert F. Rossiter, Jr., United States District Judge for the District of Nebraska, sitting by designation.

repair the leased building, loss of fair market value caused by Tenant's waste, and expenses incurred to acquire adjacent land on which the building encroached. After Abrams removed the action, the district court[1] granted summary judgment dismissing Chester's claims, concluding that an Exculpation provision, Section 26.01 of the lease agreement, unambiguously limits Landlord's remedies to termination of the lease. Davenport Chester, LLC v. Abrams Props., Inc., 2015 WL 12866991, at *9-10 (S.D. Iowa Dec. 23, 2015). Landlord appeals, arguing the Exculpation provision as interpreted by the district court is ambiguous, conflicts with other lease provisions, and should be disregarded. Under Iowa law, "an alleged ambiguity in the provisions of a lease [is] generally resolved as a matter of law," so our review is *de novo*. Walsh v. Nelson, 622 N.W.2d 499, 502 (Iowa 2001). We affirm.

## I.

In April 1977, Abrams entered into an agreement with S. S. Kresge Company to construct a K-Mart store on Abrams' land in Davenport, Iowa; lease the store to K-Mart for twenty-five years from the date of K-Mart's occupancy; and manage the store for tenant K-Mart. Chester's predecessor in interest purchased the land and building from Abrams in August 1977. Chester and Abrams entered into a twenty-five-year lease agreement on November 16, 1977, the date that K-Mart's term of occupancy began. Under the three-tiered arrangement, Abrams, as Chester's tenant, managed the store for Operating Tenant K-Mart, collected rent from K-Mart, and held the rent in trust for landlord Chester. Abrams received $255,308 in annual rent from K-Mart, plus an additional amount if store sales exceeded a threshold. Abrams paid property taxes, insurance, and maintenance costs, and paid $204,405 in annual rent to Chester, plus twenty-five percent of any additional rent received from K-Mart.

---

[1]The Honorable Stephanie M. Rose, United States District Judge for the Southern District of Iowa.

The parties twice extended their relationship for five-year renewal periods, extending the Chester-Abrams lease agreement until November 30, 2012. K-Mart closed the store in early 2012 and did not renew its sublease for another period. When Abrams failed to pay the June 2012 rent, Chester terminated the lease effective September 12, 2012. Chester retook possession of the property, and its inspector determined that the former K-Mart store needed repairs that would cost more than two million dollars. Chester asserted that the lease agreement obligated Abrams to pay for these repairs. In selling the property to a third party, Chester discovered that Abrams had built the store at least five feet outside the property line. Chester purchased that parcel to remove a cloud on the title and close the sale.

Whether Abrams must pay Chester damages to repair the store premises and to acquire the adjacent parcel is the principal issue in this lawsuit. The district court did not decide whether Abrams breached the lease agreement because it concluded that Chester exercised its only remedy for the alleged breaches when it terminated the lease. This remedy issue turns primarily on proper interpretation of the following provisions in the forty-five-page lease agreement:

> Section 6.01 - The Landlord shall not be required to furnish any services or . . . make any repairs or alternations . . . throughout the term of this Lease, the Tenant hereby assuming the full and sole responsibility for the condition, renovation, operating, repair, replacement, maintenance and management of the Demised Premises.

> Section 6.04 - The Tenant shall . . . maintain and keep the said Demised Premises and the parking lots and driveways in firstclass order, repair and condition.

> Section 6.06 - The Tenant will not do or permit or suffer any waste . . . to or upon the Demised Premises or any part thereof.

> Section 13.01 - If Tenant shall default in the observance or performance of any term or covenant . . . Landlord . . . may remedy such

default for the account and at the expense of Tenant . . . . [S]uch sums paid or obligations incurred . . . shall be deemed to be additional rent hereunder and shall be paid to [Landlord] by Tenant.

Section 26.01 - Tenant shall have no personal liability for the performance of the obligations of Tenant hereunder, and in the event of a default by Tenant in the performance of its obligations, the sole remedy of Landlord shall be to terminate this Lease.

Section 26.02 - Landlord shall have no personal liability for the performance of the obligations of Landlord hereunder, and in the event of a default by Landlord . . . the sole remedy of Tenant shall be the right to off-set against rent due Landlord by Tenant of any sums expended by Tenant to cure any such Landlord default.

## II.

The district court concluded that Section 26.01 unambiguously states that Abrams "shall have no personal liability" and limits Chester to the "sole remedy" of terminating the lease for Abrams' alleged defaults. On appeal, Chester argues the district court erred in interpreting Section 26.01 for a number of reasons.

1. Chester argues that Section 26.01 is ambiguous because one reasonable interpretation of the term "personal liability" is to protect Abrams' officers and shareholders from personal liability, not to protect Abrams, a corporation. Like the district court, we conclude the term is unambiguous. A corporation is a "person" under Iowa law and thus can have personal liability. See Iowa Code § 4.1(13) (1977). Section 26.01 provides that "[Abrams] shall have no personal liability," not that its officers and shareholders shall have no personal liability (which Iowa law would in any event preclude). Moreover, Article 5 of the lease provides that, if Tenant Abrams failed to hold K-Mart rent payments in trust for Chester, "Tenant shall have full personal liability to Landlord, the provisions of Section 26.01 of the Lease

-4-

notwithstanding." This exception to Section 26.01, and the reciprocal provisions in Article 26 exculpating both parties from personal liability, confirm that Section 26.01 exculpates the tenant corporation from personal liability. Finally, Chester presented no probative extrinsic evidence reflecting a contrary intent of the parties in 1977. "When no relevant extrinsic evidence exists, the resolution of any ambiguity in a written contract is a matter of law for the court." Alta Vista Props., LLC v. Mauer Vision Ctr., PC, 855 N.W.2d 722, 726 (Iowa 2014) (quotation omitted).

2. Chester argues that Section 26.01 as construed by the district court conflicts with (i) the provisions in Article 6 requiring tenant Abrams to maintain the leased store, make necessary repairs and alterations, and indemnify Chester from claims resulting from Tenant's failure to perform, and (ii) Section 13.01, which expressly provides that landlord Chester may remedy defaults at tenant Abrams' expense. Landlord argues that these lease provisions "are rendered meaningless if Landlord's only remedy is to terminate the Lease, rather than recover damages from Tenant's defaults." Like the district court, we disagree.

The limitation on remedies in Section 26.01 is perfectly sensible in context. Abrams agreed to manage the store for K-Mart. Under the lease agreement, Abrams retained approximately $50,000 of K-Mart's annual rent payments in exchange for this undertaking. The provisions in Article 6 confirmed that store maintenance and repair was solely Abrams' responsibility. If Abrams failed to maintain the store "in firstclass order," putting the relationship with Operating Tenant K-Mart at risk, the lease agreement gave Landlord Chester two potent remedial options. Under Section 13.01, it could perform Tenant's duties and count any expenditures as "additional rent" for which Abrams would be liable, a remedy Chester never invoked. Or it could exercise its right to terminate the lease under Section 26.01, take over Abrams' store management role, and receive K-Mart's entire rent payments. There is no conflict between the tenant-obligation provisions and the "sole remedy" provided Landlord in Section 26.01. We further conclude that the district court, in this context, properly

interpreted the lease's "indemnification" provisions "to invoke the ordinary meaning of 'indemnify' and obligate Tenant to reimburse Landlord for third-party claims -- not direct claims brought by Landlord." Chester, 2015 WL 12866991, at *7; see C & J Vantage Lease Co. v. Wolfe, 795 N.W.2d 65, 77 (Iowa 2011) (Iowa courts "strive to give effect to all the language of a contract").

3. Chester argues that Section 26.01 as interpreted by the district court falls within "the rule that a proviso or clause which is repugnant to the general purpose and intent of a contract will be disregarded." Mealey v. Kanealy, 286 N.W. 500, 502 (Iowa 1939). Chester posits that Section 26.01 is "repugnant" because it "renders several provisions in the Lease designed to protect Landlord illusory." We conclude this argument borders on the frivolous.

The Supreme Court of Iowa has construed the repugnancy principle narrowly. A contract provision "may not be disregarded as being repugnant to the purpose of the contract [if it] may be interpreted as modifying and limiting an element of the earlier provision." Id. at 506. Here, Chester purchased the property from Abrams and entered into a long term lease agreement under which it received over $6,500,000 in rent from K-Mart *and* the return of a depreciated building when the K-Mart store was no longer viable, property which Chester then sold. Section 26.01 provided Chester a "sole remedy" that protected its ability to maintain a lease relationship with K-Mart while the store was viable but limited Abrams' liability exposure to lease termination and payment of the rent it owed Chester. There is nothing unconscionable or repugnant about this remedial limitation. "Contracting parties have wide latitude to fashion their own remedies for a breach of contract and to deny full effect to such express contractual provisions is ordinarily impermissible because it would effectively reconstruct the contract contrary to the intent of the parties." C & J Vantage, 795 N.W.2d at 77 (quotation omitted).

Under Section 26.01, as properly interpreted by the district court, Chester's "sole remedy" is lease termination. Therefore, it cannot recover the alleged contract damages. Its claim for waste must also fail, because the parties expressly contracted for that liability in Sections 6.06 and 26.01 of the lease. Accordingly, the judgment of the district court is affirmed.

_____