# IN THE COURT OF APPEALS OF IOWA

No. 23-0520
Filed October 2, 2024

**GOOSMANN LAW FIRM, P.L.C.,**
    Plaintiff-Appellant,

**vs.**

**HIRSCHBACH MOTOR LINES, INC., and GR EQUIPMENT LEASING, INC.,**
    Defendant-Appellees.
_____

Appeal from the Iowa District Court for Dubuque County, Monica Ackley, Judge.

Plaintiff appeals the district court's grant of summary judgment to defendants regarding an attorney fee dispute. **REVERSED AND REMANDED.**

Mark E. Weinhardt of The Weinhardt Law Firm, Des Moines, for appellant.

Kevin H. Collins of Nyemaster Goode, PC, Cedar Rapids, for appellee.

Heard by Schumacher, P.J., and Badding and Langholz, JJ.

**SCHUMACHER, Presiding Judge.**

Goosmann Law Firm, P.L.C. (GLF) appeals the district court's grant of summary judgment to Hirschbach Motor Lines, Inc. and GR Equipment Leasing, Inc. (referred to together as Hirschbach) on an attorney fee dispute. We determine there are genuine issues of material fact about the meaning of the contingency fee provision in the parties' attorney fee contract. Accordingly, we reverse the grant of summary judgment by the district court and remand for further proceedings.

## I. Background Facts & Proceedings

GLF has represented Hirschbach in various legal matters since approximately 2004. In 2020, Hirschbach retained GLF as it considered suing Navistar, Inc., a company that supplied Hirschbach with new trucks.

GLF sent Hirschbach several options for payment of attorney fees. One option was designated as a "Blended Fee," with the notation, "Similar to the successful arrangement in the SmartTruck litigation.[1] Reduced hourly rates of $150 to $200 per hour. Plus Contingency fee: 20% of all monies recovered." In her deposition, Jeana Goosmann of GLF testified that when she and Hirschbach formed the contract, she was contemplating the contingency fee would be paid based on twenty percent of a single lump-sum cash payment, as Hirschbach was not interested in continuing to do business with Navistar.

---

[1] GLF represented Hirschbach in a previous lawsuit, referred to by the parties as the SmartTruck litigation. GLF received a reduced hourly fee plus twenty percent of the cash settlement amount. The record does not show that the settlement agreement in the SmartTruck litigation involved more than a monetary settlement.

On May 28, 2020, GLF and Hirschbach entered into a written attorney fee contract that provided Hirschbach would pay "a discounted hourly rate of 50% of Attorneys rate that Client was previously paying." The contract also provided:

> CONTINGENT FEE: In the event of recovery, Client shall pay Attorney a fee equal to 20% of the recovery, whether settled or by obtaining judgment. Costs and expenses referred to in Paragraph 2 of this agreement will not be deducted from the fee. If Client terminates Attorney's employment before conclusion of the case, Client shall pay the Attorney fee incurred at the time of the termination at full hourly rate plus 20%.

GLF filed a lawsuit on behalf of Hirschbach against Navistar in federal court. During negotiations, the nature of the settlement changed from a cash only settlement to the payment of an amount of cash and purchase incentives for new trucks. Navistar was interested in maintaining a business relationship with Hirschbach.

Hirschbach and Navistar ultimately settled in December. Navistar agreed to pay Hirschbach a cash settlement, subject to a confidentiality agreement. The settlement agreement specifically states that twenty percent of this amount should be paid to GLF. The settlement agreement also stated:

> Contemporaneously with this Settlement Agreement, the Parties shall jointly execute a Trade-in and New Purchase Agreement (the "Purchase Agreement") that shall be in the form attached hereto as Exhibit B. Any alleged failure by any Party to meet its obligations under the Purchase Agreement, or any other legal claim arising from or relating to the Purchase Agreement, shall have no effect on the validity of this Settlement Agreement or any of its provisions, and the Parties' sole remedies shall be those provided under the Purchase Agreement.

Additionally, "This Settlement Agreement, together with the attached Exhibits, constitutes the entire agreement between the Parties regarding the subject matter hereof . . . ."

Exhibit B of the settlement agreement—the Purchase Agreement—gave Hirschbach beneficial terms for the purchase of new trucks from Navistar. It also set out terms for the trade-in value of old trucks based on months in service and mileage. GLF contends that in addition to twenty percent of the cash settlement Hirschbach received, it is entitled to twenty percent of the benefit Hirschbach obtained from the Purchase Agreement as attorney fees under the contingent fee provision.

Goosmann gave this statement:

> Soon after I discussed the concept of a business solution with Hirschbach's leadership, in or around October 2020, on a warm fall day I was talking to my client Hirschbach on a video call when Paul Herzog[2] asked Brad Pinchuk[3] whether or not the legal fees applied to the value Hirschbach would receive from Navistar in a potential business deal resolution that did not involve a simple cash payment. Mr. Pinchuk clearly responded, "Yes, we are paying 20% on the deal value total as a success fee to legal."[4] As a result, while he created the first spreadsheet containing potential settlement terms on the video call with me, Mr. Herzog included legal fees at 20% of the total deal value. That was the first of a number of spreadsheets analyzing a potential business solution, and every spreadsheet from there on included legal fees at 20% of the total value of the deal.
> . . . .
> . . . On or around November 16, 2020, while discussing settlement deal items, Brad asked me if a total settlement value between [proposed figure] was acceptable to me and my law firm given the contingent fee arrangement GLF and Hirschbach had. It was plain he understood that GLF's contingent fee would apply to the business value Hirschbach would obtain from the settlement, not just an upfront cash payment. Mr. Pinchuk wanted to know if our firm would be satisfied with the contingent fee based on that proposed deal value. I confirmed that yes it was.

---

[2] Herzog is the chief financial officer of Hirschbach.
[3] Pinchuk is the president of Hirschbach.
[4] Goosmann also testified about this conversation in her deposition. She stated that during a telephone call Pinchuk was asked by Herzog, "Are we calculating legal at twenty percent of the total deal or just cash?" Pinchuk replied, "The total deal."

Goosmann stated, "The Purchase Agreement was an exhibit to the Settlement Agreement because the Purchase Agreement was an integral part of the settlement. Under no circumstances would Hirschbach have settled the Navistar lawsuit for the [cash settlement] payment contemplated in the Settlement Agreement and nothing more."

In a deposition, Pinchuk was asked about Hirschbach's obligation to GLF based on Exhibit B:

> A. According to our agreement, no. What I volunteered to Jeana was that I would—we would evaluate again the economic differences of these two trucks over time, and if that ended up generating an economic benefit to us, that we would share twenty percent of that with Jeana.
> Q. Why would you share twenty percent of that with Jeana if that caused an economic benefit to you?
> A. I thought it was the right thing to do.
> Q. Why was it the right thing to do?
> A. Because I thought it was the right thing to do. Again, it wasn't part of our agreement; and if I was going to get additional economic value, I thought I should share that.
> Q. Did you ever say to Ms. Goosmann that under your agreement you owed her firm nothing more than [twenty percent of the cash settlement]?
> A. No. I said if there was an economic benefit in comparing these two trucks over the course of the lifespan of them, the four to six years, there was an economic benefit there, that I would share twenty percent of that with her.

When asked about a spreadsheet with a notation of legal fees at twenty percent, Herzog stated in a deposition:

> A. Well, you know, when it changed to an all-cash deal—or, you know, when the transaction in total changed from all cash, when it was cash, give me [cash settlement]—we would have preferred just to get [cash settlement], much cleaner, because we would use that money to cover the losses on selling the [trucks] in the open market; right? I mean, that's the whole value proposition here.
> You know, when it changed from an all-cash deal, you know, Brad told me that, you know, he thought it was, you know, the right

thing to do or fair to Jeana to give her, you know, a cut of the economic value of this—you know, this transaction; right?

Q. When did you and Mr. Pinchuk have that conversation?

A. Oh. That would have been—I don't know, I—mid-October? You know, when we—sort of when we ended up—I don't remember. It would have been October. I really didn't get involved in this until October.

Hirschbach did not pay GLF more than the attorney fees associated with the cash payment received in the settlement agreement. GLF sued Hirschbach for unpaid legal fees, claiming the attorney fees paid "represents a small fraction" of the attorney fees owed to GLF. Hirschbach's answer stated:

> It is admitted Defendants have communicated that the Attorney Fee Contract contemplates contingent fees "in the event of recovery" and based on a percentage of "the recovery." It is affirmatively stated that Plaintiff agreed that "recovery" would be calculated based on a series of events which were to occur in the future, many of which have not yet materialized.

Hirschbach's answers also stated, "It is admitted that additional amounts may be due and owing to Plaintiff if the Attorney Fee Contract is enforceable under Iowa law and if and when Defendants obtain additional 'recovery.'"

Hirschbach moved for summary judgment. It claimed that under the contingent fee provision, GLF was entitled to twenty percent of the cash payment. Hirschbach asserted GLF had been paid twenty percent of this amount, and had no right to any additional payment for attorney fees. It claimed it should not have to pay attorney fees based on estimates concerning the future business relationship between Hirschbach and Navistar.

GLF resisted Hirschbach's motion for summary judgment. It disputed some portions of Hirschbach's statement of undisputed facts. GLF claimed there were genuine issues of material fact about whether the contingency fee provision

applied only to a "recovery" as a cash settlement or whether a "recovery" could also include the value of a business settlement. It stated Hirschbach's statements and conduct following the settlement agreement showed it understood GLF's contingent fee would apply to the business value Hirschbach obtained from the settlement agreement, including from the Purchase Agreement.

The district court granted the motion for summary judgment. The court found there was no ambiguity in the term "recovery," stating the parties' intent was clear from their email exchanges "at the time of the execution of the contract." The court found the parties intended the term "recovery" to mean a lump-sum payment. And, the court determined, "The trade-in provisions and the purchase agreement were a separate and distinct matter that would be dealt with over the next 48 months." The court concluded that if the contingent fee contract was intended to include attorney fees based on future events, this should have been specifically spelled out in the contingent fee contract. GLF appeals the district court's ruling.

## II.    Standard of Review

We review a district court's decision granting summary judgment for the correction of errors of law. *Jones v. Univ. of Iowa*, 836 N.W.2d 127, 139 (Iowa 2013). Summary judgment may be granted if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). The record is reviewed in the light most favorable to the nonmoving party. *Deeds v. City of Marion*, 914 N.W.2d 330, 339 (Iowa 2018).

The party seeking summary judgment has the burden to establish there are no genuine issues of material fact. *Morris v. Steffes Group, Inc.*, 924 N.W.2d 491, 496 (Iowa 2019). There is a genuine issue of material fact "if reasonable minds

can differ on how an issue should be resolved." *Banwart v. 50th St. Sports, L.L.C.*, 910 N.W.2d 540, 544 (Iowa 2018). "[A] court deciding a motion for summary judgment must not weigh the evidence, but rather simply inquire whether a reasonable jury faced with the evidence presented could return a verdict for the nonmoving party." *Clinkscales v. Nelson Sec., Inc.*, 697 N.W.2d 836, 841 (Iowa 2005).

"[T]o successfully resist a motion for summary judgment, the resisting party must set forth specific evidentiary facts showing the existence of a genuine issue of material fact." *In re Est. of Henrich*, 389 N.W.2d 78, 80 (Iowa Ct. App. 1986). A party cannot rest on mere allegations or a denial of the pleadings. Iowa R. Civ. P. 1.981(5). "Although our rules of procedure allow a nonmoving party to resist summary judgment, the burden is still on the moving party 'to show the district court that there was no genuine issue of material fact and that it was entitled to a judgment as a matter of law.'" *Otterberg v. Farm Bureau Mut. Ins. Co.*, 696 N.W.2d 24, 27 (Iowa 2005) (citation omitted).

## III.   Discussion

**A.**   The district court determined the Purchase Agreement was "a separate and distinct matter" from the settlement agreement. Hirschbach furthers this argument on appeal, stating the Purchase Agreement was "a separate, standalone, integrated contract."

The settlement agreement incorporates the Purchase Agreement, stating, "Contemporaneously with this Settlement Agreement, the Parties shall jointly execute a Trade-in and New Purchase Agreement (the 'Purchase Agreement') that shall be in the form attached hereto as Exhibit B." Under the paragraph heading,

"Entire Agreement," the settlement agreement provides, "This Settlement Agreement, *together with the attached Exhibits*, constitutes the entire agreement between the Parties regarding the subject matter hereof . . . ." (Emphasis added.) The Purchase Agreement is attached as Exhibit B.[5]

The record does not support a finding that the Purchase Agreement was "a separate and distinct matter" from the settlement agreement. The language of the settlement agreement shows the exhibits to the settlement agreement are included within the entirety of the agreement, meaning the Purchase Agreement is included within the settlement agreement. We conclude the district court erred by concluding the Purchase Agreement was "a separate and distinct matter" from the settlement agreement.

**B.** The term "recovery" is used only in the contingent fee provision of the written attorney fee contract signed by GLF and Hirschbach. The contract provides, "In the event of recovery, Client shall pay Attorney a fee equal to 20% of the recovery, whether settled or by obtaining judgment." The term "recovery" is not defined in the written attorney fee contract. The term is not specifically limited to only monetary recovery, nor is it written expansively to include any type of recovery.

In granting summary judgment to Hirschbach, the district court found as a matter of law that the term "recovery" in the contingent fee provision meant a single monetary payment. The court found the term "recovery" was not ambiguous. GLF argues the term is ambiguous and could be interpreted to mean Hirschbach's total

---

[5] Exhibit A is the dismissal of the lawsuit Hirschbach filed in federal court against Navistar.

recovery in the settlement, which would include the benefits received from the Purchase Agreement.

Contract "[i]nterpretation involves ascertaining the meaning of contractual words; construction refers to deciding their legal effect." *Payton v. DiGiacomo*, 874 N.W.2d 673, 677 (Iowa Ct. App. 2015) (quoting *Fashion Fabrics of Iowa, Inc. v. Retail Investors Corp.*, 266 N.W.2d 22, 25 (Iowa 1978)). We engage in contract interpretation to determine the meaning of words in a contract. *Rick v. Sprague*, 706 N.W.2d 717, 723 (Iowa 2005). To determine the meaning of "recovery" in the parties' attorney fee contract, we engage in interpretation, rather than construction. *See id.*

The Iowa Supreme Court has stated:

> The primary goal of contract interpretation is to determine the parties' intentions at the time they executed the contract. *See Hartig Drug Co.* [*v. Hartig*], 602 N.W.2d [794,] 797 [(Iowa 1999)]. Interpretation involves a two-step process. First, from the words chosen, a court must determine "what meanings are reasonably possible." Restatement (Second) of Contracts § 202 cmt. a, at 87 (1981). In so doing, the court determines whether a disputed term is ambiguous. A term is not ambiguous merely because the parties disagree about its meaning. *Hartig Drug Co.,* 602 N.W.2d at 797. A term is ambiguous if, "after all pertinent rules of interpretation have been considered," "a genuine uncertainty exists concerning which of two reasonable interpretations is proper." *Id.*

*Walsh v. Nelson*, 622 N.W.2d 499, 503 (Iowa 2001)

The court has also stated:

> Any determination of meaning or ambiguity should only be made in the light of the relevant evidence of the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties. But after the transaction has been shown in all its length and breadth, *the words of an integrated agreement remain the most important evidence of intention.*

*Id.* (quoting Restatement (Second) of Contracts § 212 cmt. b (emphasis added) (citation omitted)).

The general rules for interpretation of contracts are set out in Restatement (Second) of Contracts section 202 as follows:

> (1) Words and other conduct are interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight.
> (2) A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together.
> (3) Unless a different intention is manifested,
>> (a) where language has a generally prevailing meaning, it is interpreted in accordance with that meaning;
>> (b) technical terms and words of art are given their technical meaning when used in a transaction within their technical field.
> (4) Where an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement.
> (5) Wherever reasonable, the manifestations of intention of the parties to a promise or agreement are interpreted as consistent with each other and with any relevant course of performance, course of dealing, or usage of trade.

"To the extent necessary to reveal the parties' intent, extrinsic evidence is admissible." *DuTrac Cmty. Credit Union v. Radiology Grp. Real Est., L.C.*, 891 N.W.2d 210, 216 (Iowa 2017).

If the language of a contract is ambiguous, so that extrinsic evidence is admissible, "a question of interpretation is left to the trier of fact unless 'the evidence is so clear that no reasonable person would determine the issue in any way but one.'" *Fausel v. JRJ Enters., Inc.*, 603 N.W.2d 612, 618 (Iowa 1999) (quoting Restatement (Second) of Contracts § 212 cmt. e). "But if the issue depends on evidence outside the writing, and the possible inferences are

conflicting, the choice is for the trier of fact." Restatement (Second) of Contracts § 212 cmt. e.

Black's Law Dictionary defines "recovery" as:

> 1. The regaining or restoration of something lost or taken away. The collection of charged-off bad debt that has been previously written off against the allowance for doubtful accounts. 2. The obtainment of a right to something (esp. damages) by a judgment or decree. 3. Common Recovery.[6] 4. An amount awarded in or collected from a judgment or decree.

*Recovery*, Black's Law Dictionary (11th ed. 2019) (citation omitted).

The definition of "recovery" is not limited to a lump sum monetary payment, as found by the district court. The term can mean "a right to *something* (esp. damages) by a judgment or decree." *Id.* (emphasis added). As noted above, the settlement agreement and the Purchase Agreement are part of the same agreement. "A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together." Restatement (Second) of Contracts § 202(2). We determine there is a genuine issue of material fact about whether the "something" Hirschbach received as a result of negotiations with Navistar was a cash payment and purchasing incentives.

Looking at the four corners of the settlement agreement between Hirschbach and Navistar, we determine the district court erred by finding as a matter of law that the term "recovery" in the contingent fee agreement was limited to Hirschbach's recovery of the cash settlement agreement, disregarding

---

[6] The term "common recovery" is separately defined as "[a]n elaborate legal proceeding, full of legal fictions, in which a tenant in tail disentailed a fee-tail estate." *Common Recovery*, Black's Law Dictionary (11th ed. 2019). Common recoveries were abolished in the early 19th century. *Id.*

Hirschbach's recovery in the Purchase Agreement that was an integrated part of the settlement agreement. We determine it was an error for the district court to conclude Hirschbach's recovery was limited to what it received from only part of the total agreement.

We conclude the district court improperly granted summary judgment to Hirschbach. We reverse the court's decision and remand for further proceedings.

**REVERSED AND REMANDED.**