# IN THE SUPREME COURT OF IOWA

No. 08–0349

Filed July 31, 2009

**OFFICE OF CONSUMER ADVOCATE,**

Appellant,

vs.

**IOWA UTILITIES BOARD,**

Appellee,

and

**FRONTIER COMMUNICATIONS OF IOWA, INC., and MCI COMMUNICATIONS, INC., d/b/a VERIZON BUSINESS SERVICES,**

Intervenors-Appellees.

Appeal from the Iowa District Court for Polk County, Michael D. Huppert, Judge.

The Office of Consumer Advocate appeals from a district court judgment which affirmed on judicial review the Iowa Utilities Board's denial of three petitions filed by the Consumer Advocate seeking civil penalties for alleged violations of Iowa Code section 476.103 (2007). **AFFIRMED.**

John R. Perkins, Consumer Advocate, and Craig F. Graziano of the Office of Consumer Advocate, for appellant.

David Lynch and E.A. "Charlie" Nichols, Des Moines, for appellee.

Bret A. Dublinske of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for intervenors-appellees.

**BAKER, Justice**.

The Office of Consumer Advocate (OCA) appeals from a district court judgment which affirmed on judicial review the Iowa Utilities Board's (Board) denial of three petitions filed by OCA seeking civil penalties based on consumer complaints of unauthorized charges and/or changes in service by telecommunications companies. OCA has raised three issues on appeal: (1) whether the procedures utilized by the Board, following a change in its review process, resolve disputed questions of fact without hearing the evidence or allowing for discovery or cross-examination, resulting in outcomes that are not reliable, in contravention of constitutional standards; (2) whether the Board's orders denying OCA's petitions for proceedings to consider civil monetary penalties in these cases are arbitrary and capricious under the standards contained in Iowa Code section 17A.19(10)(*h*); and (3) whether the district court abused its discretion in refusing to admit new exhibits on appeal. We hold that the Board's orders denying OCA's petitions for proceedings to consider civil penalties were not in contravention of constitutional standards nor arbitrary and capricious under the standards contained in Iowa Code section 17A.19(10)(*h*). We also find that the district court did not abuse its discretion in denying OCA's petition to admit additional exhibits.

## I. Background Facts and Proceedings.

OCA seeks review of the Board's decisions denying petitions to commence proceedings to consider civil monetary penalties for alleged violations of Iowa Code section 476.103 (2007). This statute, along with the regulations contained in Iowa Administrative Code rule 199—22.23, prohibits "unauthorized changes in telecommunications service." Iowa Admin. Code r. 199—22.23(2). These unauthorized changes are referred

to as "slamming" and "cramming." *Id.* Slamming is the practice of changing a consumer's service without permission. Cramming refers to charging a consumer for services that were not ordered, authorized, or received. *Id.* r. 199—22.23(1).

Four cases were consolidated in the district court. OCA has since dismissed its appeal in one case as moot. The pertinent facts of the remaining cases are as follows.

**A. Katina Costerisan Case**. The Board received a complaint from Katina Costerisan, disputing $988.55 in charges on a bill from her local telephone provider, Frontier, for long-distance calls handled by MCI. Costerisan's telephone bill showed that the calls were charged at a rate substantially higher than the rate for her long-distance plan with Frontier. Some of the calls were charged at rates as high as $2.23 per minute. After reviewing the complaint, the Board forwarded the complaint to Frontier and MCI to give them an opportunity to respond.

MCI responded in a letter stating that Frontier is a reseller of services for MCI's Network Services (MNS). MNS is a division of MCI that provides wholesale services for other local long distance companies to sell directly to consumers. MCI stated that reseller companies use MCI's network but technically they are selling their own products and services, and, therefore, they set their own rates and handle their own advertising. MCI declared that MNS had not solicited or requested the service for Costerisan's telephone number. Frontier responded to the Board stating it had incorrectly set-up Costerisan's account, and it had removed the disputed charges from her account.

The Board issued a proposed resolution concluding that slamming had not occurred in Costerisan's case and determining that the disputed

charges were the result of an error in Frontier's processing of Costerisan's order.

**B. Eddie Atkinson Case.** Eddie Atkinson filed a billing complaint with the Board regarding a $95 "trouble charge" billed to him by his long-distance provider McLeodUSA Telecommunications Services, Inc. Atkinson stated that he called McLeod to report that calls were not getting through to his home. He stated the McLeod representative told him that his lines would be checked up to the house and if a problem was found it would be corrected free of charge. If the technician had to enter his home, however, he would be charged up to $95. Atkinson was contacted the next day and told the outside of his house was fine and the trouble must be internal. Atkinson checked his home and discovered he had a bad surge protector. He corrected the problem himself. Even though a technician never entered his home, Atkinson received a phone bill containing a $95 trouble charge.

The Board forwarded Atkinson's complaint to McLeod. McLeod responded that there had been a miscommunication with the customer, and Atkinson should have been told there would be a charge up to $95 to have a technician go out to his house unless the technician found a problem on McLeod's equipment outside the home. McLeod refunded the disputed charge. The Board issued a proposed resolution finding there had been a miscommunication between McLeod and Atkinson regarding the trouble charge.

**C. Mike Mellody Case.** Mike Mellody called Qwest Corporation (Qwest) to have his daughter's phone repaired. He was later charged $85 for trouble isolation. He claimed that when he called to inquire about repairing the phone, the trouble charge was not mentioned or explained to him.

The Board forwarded Mellody's complaint to Qwest. According to Qwest, Mellody placed a repair request, and the next day a technician went to his daughter's residence, tested the outside line, and found no problems. Qwest admitted that because Mellody never asked Qwest to check the wiring inside the house, the trouble charge should not have been billed. Qwest explained the charge resulted from an error by a technician who had recently transferred into the state from Arizona where the rules for repair charges are different. Qwest credited Mellody's account for the disputed charge. The Board issued a proposed finding that the Qwest technician made a mistake, resulting in an incorrect charge.

## II. Proceedings.

In each of these three cases, OCA filed a petition with the Board alleging a violation of Iowa Code section 476.103 and requesting a proceeding to consider a civil monetary penalty pursuant to that section. The Board denied all three petitions.

In denying the request in Costerisan's case, the Board found:

[T]he Board does not find reasonable grounds for further investigation. The Board finds that any change in service providers made in this case was unsolicited, unintentional, temporary, and unlikely to recur.

The Board is familiar with Consumer Advocate's position regarding the assessment of civil penalties for inadvertent violations. In this case, however, because the Board does not believe further investigation would produce information that would support a finding of a slamming or cramming violation on the part of either MCI or Frontier, thus leading to possible civil penalties, the Board will deny Consumer Advocate's petition for proceeding to consider civil penalty.

In denying the request in Atkinson's case, the Board found:

The record shows, at most, that a misunderstanding occurred between Mr. Atkinson and McLeodUSA with regard to the precise terms and conditions as to when the $95

trouble charge would apply, but he nonetheless authorized a service call knowing there could be a charge. . . . It is only reasonable to conclude he would have authorized the service call even if the McLeodUSA script had been more precise, because he needed to determine why his service was unsatisfactory. The undisputed facts in this case do not establish reasonable grounds for further investigation of this case.

In denying the request in Mellody's case, the Board found:

Board staff has determined in this case, and Qwest has confirmed, that the technician working on Mr. Mellody's daughter's telephone line committed an error. Qwest has credited the customer and corrected the mistake. As stated above, the Board does not believe that these circumstances create any reasonable grounds for further proceeding to consider civil penalty.

OCA sought judicial review. In Costerisan's case, the district court granted motions by Frontier and MCI for permissive intervention. The court consolidated the cases. The district court affirmed the findings of the Board on all the issues raised. OCA appealed the district court's decision.

**III. Discussion and Analysis.**

**A. Board Denials.** OCA argues that effective August 1, 2006, the Board materially changed its procedures regarding the granting of hearings to assess civil penalties under Iowa Code section 476.103. The pertinent parts of that statute provide:

3. The board shall adopt rules prohibiting an unauthorized change in telecommunications service. The rules shall be consistent with federal communications commission regulations regarding procedures for verification of customer authorization of a change in service. The rules, at a minimum, shall provide for all of the following:

. . . .

g. Procedures for a customer, service provider, or the consumer advocate to submit to the board complaints of unauthorized changes in service.

4. a. In addition to any applicable civil penalty set out in section 476.51, a service provider who violates a provision

of this section, a rule adopted pursuant to this section, or an order lawfully issued by the board pursuant to this section, is subject to a civil penalty, which, after notice and opportunity for hearing, may be levied by the board, of not more than ten thousand dollars per violation. Each violation is a separate offense.

Iowa Code § 476.103.

Having docketed OCA petitions for civil penalties under section 476.103(4) as a matter of course for three years, the Board began to deny most of OCA's petitions after notifying OCA that future petitions would be denied unless there were "reasonable grounds for further investigation."

OCA claims that the Board's orders denying its petitions for proceedings to consider civil monetary penalties in these three cases are arbitrary and capricious. OCA's many contentions of error regarding the Board's denials can be summarized into two general claims: (1) the procedures utilized by the Board following the change in procedure resolve questions of fact without hearing the evidence or allowing for discovery or cross-examination in contravention of constitutional standards; and (2) the Board prejudicially altered its procedures in cases arising under Iowa Code section 476.103 in ways that are inconsistent with prior practice and precedent, without a rational reason.

1. *Constitutional violation.* OCA claims the procedures utilized by the Board following the described change in practice resolve disputed questions of fact without hearing the evidence, or allowing for discovery or cross-examination, resulting in outcomes that are not reliable, in violation of constitutionally required procedural due process. OCA states that the Board relies on an informal paper process to resolve material disputes of adjudicative fact. OCA further contends that this procedure gives a false sense of authenticity to the claims the companies make for

the veracity of their records and, therefore, deprives consumers of the only real evidence they have, their testimony. OCA states these biased and unreliable results do not meet constitutional standards.

We first review the procedures utilized by the Board. For every consumer complaint the Board receives, it must follow the extensive procedures required by Iowa Code section 476.3. To implement these requirements, the Board promulgated Iowa Administrative Code chapter 199—6. Iowa Code section 476.3 demands that the Board create a file for every written complaint submitted by a consumer involving contested behavior by a utility company. Iowa Code § 476.3(1). Once the file is created, the Board must forward the consumer complaint and any additional evidence to the utility company. Iowa Admin. Code r. 199—6.3(1). A copy of the file is also sent to OCA. *Id.* r. 199—6.3(2). According to the Board's rules, the utility company has twenty days to file a response to the complaint. *Id.* r. 199—6.3(3). The company is required to forward a copy of this response to OCA. *Id.* The response must address each allegation made by the consumer and recite any supporting facts, statutes or rules. *Id.* The utility company must also enclose copies of any documents related to the complaint that are not confidential or privileged. *Id.*

After reviewing the utility's response, the Board may request any additional information it deems necessary to resolve the complaint. *Id.* r. 199—6.4(1). When the Board is satisfied that all the relevant information has been gathered, it issues a proposed resolution to the complaint. *Id.* The copies of the proposed resolution are sent to the consumer, the utility company, and OCA. *Id.* If either of the parties or OCA is dissatisfied with the proposed resolution, that party may file a request for formal complaint proceedings within fourteen days of the

issuance of the proposed resolution. *Id.* r. 199—6.5(1). If a request is made, the Board shall then "consider whether formal complaint proceedings should be initiated." *Id.* r. 199—6.5(3). These procedures apply to all consumer complaints brought under Iowa Code section 476.103. *Id.* rs. 199—6.8, 199—22.23(4).

If the Board determines that a formal complaint proceeding is not warranted, interested parties, including OCA, may seek judicial review of the Board's decision under the Iowa Administrative Procedure Act, Iowa Code chapter 17A. *See id.* r. 199—6.5(3). Regardless of whether a formal hearing is granted on the consumer's complaint, the Board retains discretion on whether to levy a penalty on a provider. *See* Iowa Code § 476.103(4)(*a*) (providing board may levy, after notice and opportunity to be heard, civil penalties for violations of this section).

The function of the Board up to this point in the complaint process is primarily the resolution of the consumer's complaint. With respect to the imposition of a civil penalty, however, the Board is simply gathering information to determine whether a civil penalty may be appropriate, thereby warranting further action by the Board. We do not determine whether due process rights attach at this point, as the parties do not raise this issue. *See generally Citizens' Aide/Ombudsman v. Rolfes*, 454 N.W.2d 815, 818 (Iowa 1990) (stating procedural due process rights do not attach to those agency actions that are purely investigative and do not deprive anyone of his life, liberty, or property (citing *Hannah v. Larche*, 363 U.S. 420, 440–41, 80 S. Ct. 1502, 1513–14, 4 L. Ed. 2d 1307, 1320–21 (1960))).

Assuming that OCA has a protected interest in having the Board pursue civil penalties, we consider what process is due. The United States Supreme Court addressed the issue of when a party must be

afforded an evidentiary hearing before an agency in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L. Ed. 2d 18, 33 (1976). In determining that prior to the termination of social security benefits the party receiving those benefits need not be afforded an opportunity for an evidentiary hearing, the Court applied a three part balancing test. *Id.* The court weighed: (1) the private interest implicated; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and fiscal and administrative burdens that additional or substitute procedural requirements would entail. *Id.*

Applying this test in this case, we determine that the Board's procedures do not violate constitutional due process standards. The private interest implicated in this case is not the consumer's right to a refund; it is OCA's (or rather the State's) deprivation of the right to a civil penalty. The consumer's right to recourse for a telecommunications company allegedly incorrectly changing service providers or allegedly charging for services not ordered has already been adjudicated by the Board at this point in the proceedings. *See* Iowa Code § 476.3. The private interest implicated, therefore, is simply the deterrent effect of a civil penalty. That interest, while important, is minimal here where the violations resulted from employee error, action less likely than intentional misconduct to be avoided in the future by imposition of a penalty.

The second part of the balancing test is the risk of an erroneous deprivation of OCA's interest and the probable value of any additional procedural safeguards. In these particular cases, the Board has determined not to pursue civil penalties because the violations were the

result of unintentional mistakes, and the erroneous charges were removed. The potential deprivation of a penalty is, therefore, low because given the outcome of the consumer's complaint, it is unlikely a penalty would be imposed. *See Mathews*, 424 U.S. at 341, 96 S. Ct. at 906, 47 L. Ed. 2d at 37 ("[T]he degree of potential deprivation that may be created by a particular decision is a factor to be considered in assessing the validity of any administrative decisionmaking process."). As noted above, the current Board procedure allows for extensive evidence gathering from the consumer and the provider. We conclude, therefore, the probable value of any additional procedural safeguards is minimal.

The last part of the *Mathews* balancing test is the government's interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail. OCA is requesting that the Board provide for formal hearing on every petition it files for civil penalties. As the Board noted in its order denying OCA's request for reconsideration in the Atkinson complaint, providing a hearing in only those cases that have a reasonable basis for further action is "an efficient means of allocating the agency's limited resources in order to serve the public interest and the interests of the customer, the public utility and Consumer Advocate." We agree. We find that the Board's policy of allowing formal hearings for civil penalty petitions only in cases with reasonable grounds for further investigation does not violate constitutional due process standards.

*2. Prejudicially altered procedures.* OCA claims the Board's procedural change in 2006, wherein OCA's petitions for civil penalties would be denied unless there were "reasonable grounds for further investigation," violated Iowa Code section 17A.19(10)(*h*). This code

section authorizes relief from agency action, other than a rule, when that action is "inconsistent with the agency's prior practice or precedents, unless the agency has justified that inconsistency by stating credible reasons sufficient to indicate a fair and rational basis for the inconsistency." Iowa Code § 17A.19(10)(*h*).

We elaborated on this section in *Finch v. Schneider Specialized Carriers, Inc.*, 700 N.W.2d 328, 332 (Iowa 2005), wherein we stated:

> The reporter-draftsman for the 1998 amendments has written that paragraph (*h*) provides a specific example "of agency action that any reviewing court should overturn as unreasonable, arbitrary, capricious, or an abuse of discretion." The author suggests that this language does not really change the law, "but it should result in somewhat more structured, informed, and systematic review by the courts under the unreasonable, arbitrary, capricious, and abuse of discretion standards, and clearer arguments by and instructions to litigants with respect to the arguments that may be made with respect to such matters." We agree paragraph (*h*) does not change the law and was intended to amplify review under the unreasonable, arbitrary, capricious, and abuse-of-discretion standards.

*Id.* (quoting Arthur Earl Bonfield, *Amendments to Iowa Administrative Procedure Act, Report on Selected Provisions to Iowa State Bar Association and Iowa State Government* 69 (1998)).

The intent of paragraph (*h*) is not to prohibit any change in practice or procedure, but rather, the rule requires "consistency in reasoning and weighing of factors leading to a decision tailored to fit the particular facts of the case." *Anthon-Oto Cmty. Sch. Dist. v. Pub. Employment Relations Bd.*, 404 N.W.2d 140, 144 (Iowa 1987). Thus, "an agency's failure to conform to its prior decisions[,] or furnish sufficient reasoning from which to distinguish them, may give rise to a reversal under [chapter 17A]." *Id.* at 143. Iowa Code section 17A.19(10)(*h*) is intended to address inconsistencies in agency decisions for individual

cases; it does not provide a vehicle to challenge changes in agency procedure that are applicable to all cases that come before the agency.

The 2006 change was not an inconsistency related to a case decision; it was a uniform change intended to conform the Board's procedures to the governing statute's provisions. The Board claims it had been incorrectly interpreting and applying the requirements of sections 476.3 and 476.103. It asserts that in changing its practice from routinely granting formal hearings on OCA's petitions to granting hearings only in those cases showing reasonable grounds for further investigation, it was simply conforming its practice to the requirements of these statutes.

Iowa Code section 476.103(4) provides that "a service provider who violates a provision of this section, a rule adopted pursuant to this section, or an order lawfully issued by the board pursuant to this section, is subject to a civil penalty, which, after notice and opportunity for hearing, may be levied by the board . . . ." According to the plain language of the statute, only if a provider violates the section and the Board has decided to consider the imposition of a civil penalty *must* a hearing be held. There is, however, nothing in section 476.103 that requires the Board to levy a penalty, nor is there any provision for OCA to commence proceedings on its own. Further, the statute must be read in conjunction with Iowa Code section 476.3 which mandates the procedures for the Board in investigating complaints: "*If . . . there appears to be any reasonable ground for investigating the complaint,* the board shall promptly initiate a formal proceeding." Iowa Code § 476.3 (emphasis added). It is from this section that the Board took its current standard for granting hearings for purposes of considering civil penalties.

Where, as here, "an agency concludes that its application of a statute is in error, it is not required to go on indefinitely misapplying the statute; it may alter the application." *Bair v. Estate of Biggins*, 356 N.W.2d 551, 555 (Iowa 1984). In each of the three cases at issue, the Board specifically found that there was no violation of the statute—only mistakes or miscommunications. Thus, the Board was neither required to assess a civil penalty in these three cases nor provide a formal hearing on that issue. Because the Board concluded there were no reasonable grounds for further investigation for purposes of imposing a civil penalty, it properly refused to provide a formal hearing. We conclude, therefore, that the Board's procedural change conformed to the statutory scheme.

**B. Court's Refusal to Admit Exhibits.** OCA alleges that the district court abused its discretion in refusing to admit OCA's exhibits submitted for the first time on judicial review. OCA claims these exhibits were offered to prove what occurred in the agency and to facilitate the court's search for errors of law.

The standard the district court relied upon in denying OCA's motion for the admission of new evidence is derived from Iowa Code section 17A.19(7) which states: "In proceedings for judicial review of agency action a court may hear and consider such evidence as it deems appropriate." Iowa Code § 17A.19(7). We review the district court's refusal to admit OCA's new exhibits on appeal for abuse of discretion. *Medco Behavioral Care Corp. of Iowa v. Iowa Dep't of Human Servs.*, 553 N.W.2d 556, 562 (Iowa 1996).

Iowa Code section 17A.19(7) gives a reviewing court the discretion to receive and consider additional evidence that was not available to the agency. *Id.* This discretion, however, is for the limited purpose of " 'highlighting what actually occurred in the agency in order to facilitate

the court's search for errors of law or unreasonable, arbitrary, or capricious action.'" *Id.* (quoting *Krause v. State ex rel. Iowa Dep't of Human Servs.*, 426 N.W.2d 161, 165 (1988)). The additional evidence is for the purpose of determining whether the agency exceeded its legal authority or committed legal error. *Id.* It is not to be used to retry the factual issues in district court. *Id.*

The district court found that the proffered evidence did not pass "the basic threshold of relevance—'having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" Iowa R. Evid. 5.401. In denying admission of most of the exhibits OCA requested be admitted, the district court stated:

> The vast majority of the materials sought to be included in the record by the petitioner pertain to other consumer complaints and dispositions not pertinent to the matters at hand. The petitioner seeks to expand this already crowded field to encompass virtually the entire recent universe of complaints involving alleged similar conduct by carriers and other unrelated agency action. There is no reason to further muddy the waters by including most of this information.

OCA claimed the additional evidence was offered to "highlight[] what actually occurred in the agency in order to facilitate the court's search for errors of law or unreasonable, arbitrary, or capricious action." OCA states that relevance before the district court should not be determined solely with reference to the adjudicative facts of the cases. Relevancy, it argues, may also relate to the alleged errors for which review is sought. OCA contends the errors of which it complains are not tied to the specific facts of any one case; they are errors of a general nature, repeated from case to case when the decisions under review are issued. It is the cumulative impact of these continuous errors that OCA asks the court to address.

The only issue before the district court was the Board's refusal to grant hearings in these three cases.[1] Because the exhibits would not have shed light on the Board's decision not to grant hearings for the assessment of civil penalties in the three cases before the court, the district court did not abuse its discretion in denying OCA's petition to admit the additional exhibits.

**IV. Disposition.**

We find that the Board's orders denying OCA's petitions for proceedings to consider civil penalties in these three cases were not in contravention of constitutional standards, nor arbitrary and capricious under the standards contained in Iowa Code section 17A.19(10)(*h*). We also find that the district court did not abuse its discretion in denying OCA's petition to admit additional exhibits. Therefore, we affirm the district court's judgment.

**AFFIRMED.**

All justices concur except Appel, J., who takes no part.

---

[1]OCA did not separately seek judicial review of the Board's policy decision to change its general practice of granting a hearing on every request by OCA for a civil penalty. This issue was raised only insofar as it affected the orders in these particular cases.