# IN THE COURT OF APPEALS OF IOWA

No. 21-1995
Filed February 8, 2023

**RICHARD CHAMPION and ROBERT WINTERTON,**
Petitioners-Appellants,

**vs.**

**PUBLIC EMPLOYMENT RELATIONS BOARD,**
Respondent-Appellee,

**STATE OF IOWA, BOARD OF REGENTS,**
Intervenor.
_____

Appeal from the Iowa District Court for Chickasaw County, Margaret L. Lingreen, Judge.

Richard Champion and Robert Winterton appeal the district court's ruling on judicial review upholding the Public Employment Relations Board's decision on the petition for bargaining unit clarification. **AFFIRMED.**

Richard D. Champion, Manassas Park, Virginia, and Robert W. Winterton, New Hampton, self-represented appellants.

Brenna Bird, Attorney General, Diana S. Machir (until withdrawal), Benjamin J. Flickinger (until withdrawal), and Jeffrey C. Peterzalek, Assistant Attorneys General, for appellee Public Employment Relations Board.

Andrew Tice and Ann Smisek of Ahlers & Cooney, P.C., Des Moines, for appellee Board of Regents.

Heard by Bower, C.J., Schumacher, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**BOWER, Chief Judge.**

Richard Champion and Robert Winterton[1] appeal the district court's ruling on judicial review upholding the Public Employment Relations Board's (PERB) decision on their petition for bargaining unit clarification. Petitioners claim the plain language of the unit encompasses law research assistants who provide services to law professors, entitling them to inclusion in the bargaining unit. Because the Petitioners have failed to show PERB's decision is inconsistent with the agency's prior practice or precedents and is not unreasonable, arbitrary, capricious, or an abuse of discretion, we affirm.

**I. Background Facts and Proceedings.**

This appeal concerns a petition for collective bargaining unit clarification filed on May 19, 2017, pursuant to Iowa Administrative Code rule 621-4.7.[2]

---

[1] Winterton was allowed to intervene after these proceedings were initiated by Champion. We will refer to them collectively as Petitioners.

[2] Iowa Administrative Code rule 621-4.7 states:

> A petition to clarify the inclusion or exclusion of job classifications or employees in an agency-determined bargaining unit may be filed by the public employer, an affected public employee, or the certified employee organization. Such petition may be filed only if the bargaining unit is represented by a certified bargaining representative. Insofar as applicable, the procedures for such filing shall be as provided in subrule 4.6(1).

Rule 621-4.6(1), governing the amendment of a unit, provides:

> A petition for amendment of an agency-determined bargaining unit may be filed by the public employer or the certified employee organization. The petition shall contain:
> a. The names, addresses, telephone numbers and email addresses of the public employer and the employee organization or their respective representatives.
> b. An identification and description of the proposed amended unit.
> c. The names and addresses of any other employee organizations which claim to represent any employees affected by

> [T]he unit clarification proceeding is intended to clarify the make-up of the unit as presently constituted.
>
> Thus, . . . the principal focus is on whether the position at issue does constitute part of the existing bargaining unit, specifically, whether the position is encompassed by the wording of the present bargaining unit description. If that description itself unambiguously resolves the question, the inquiry is concluded. If, however, the unit description is ambiguous with regard to the position at issue, attention is turned to other factors which might be probative of whether the position falls within the determined unit, including such matters as whether it has traditionally been treated as such, whether similar positions or persons who perform similar duties are included in the unit, and like factors. But again, the focus is on those matters probative of whether the position *is* and *has been* in the bargaining unit, not whether it should be or should have been placed in the bargaining unit.

*E. Iowa Cmty. Coll. Higher Ed. Ass'n*, 82 PERB 2110, at \*3–4 (1982).[3]

The relevant bargaining unit here, COGS,[4] has been represented by United Electrical Radio & Machine Workers of America, Local 896 (UE), since certification on May 6, 1996. Petitioners assert they are Law Research Assistants encompassed by the wording of the present bargaining unit description:

> INCLUDED: All currently enrolled graduate and professional students with a 25% or more appointment (i.e. teaching at least one course and/or providing service for at least [ten] hours a week) employed as: Teaching Assistants (FT19), Research Assistants

---

the proposed amendment or a statement that the petitioner has no knowledge of any other such organization.

    d. Job classifications of the employees as to whom the issue is raised, the number of employees, if any, in each classification, and whether each job classification qualifies as a public safety employee.

    e. A statement identifying the current status of the unit as either a public safety or a non-public safety unit and the change, if any, to the status of the unit which would result from the requested amendment.

    f. A specific statement of the petitioner's reasons for seeking amendment of the unit and any other relevant facts.

[3] PERB decisions can be found by database search at https://www.iowaperb.org under "PERB and Court Decisions," here, case number 2110.

[4] This is an acronym for the organization that sought to represent the group in 1993, Campaign to Organize Graduate Students.

(FR19), and Law Research Assistants (FL19) who provide services to the University in exchange for salary compensation.

EXCLUDED: 1. Research Assistants (FR19 or FL19) whose appointments are (a) primarily a means of financial aid which do not require the individuals to provide services to the University, or (b) which are primarily intended as learning experiences which contribute to the students' progress toward their graduate or professional program of study or (c) for which the students receive academic credit. . . .

Petitioners alleged:

The unambiguous language of the order of certification includes current FL19 Law Research Assistant positions who serve law professors. Workers in those positions work at least [ten] hours/wk, provide service (substantially similar to those in the unit), don't earn academic credit for their work, and whose work, consequently, does not "contribute to the students' progress toward [their JD degree]."

The State of Iowa Board of Regents (BOR) rejected the assertion the present bargaining unit includes law research assistants who are assigned to faculty. Evidence and testimony were presented at a September 22, 2017 hearing before an administrative law judge (ALJ), who issued a proposed ruling on February 11, 2019.

The ALJ outlined how the BOR and COGS initially reached the stipulation as to who was included and excluded:

When COGS and the [BOR] agreed to the unit composition in 1993, the University employed law research assistants who worked at the law school bookstore, library, and computer lab. It also employed law research assistants who worked for faculty members. Based upon the parties' agreement, law research assistants that worked at the library, bookstore[,] or computer lab were included in the unit because they provided a service that would have required hiring another employee if the assistantship was not in existence. The law research assistants who worked for faculty members were excluded based on one or more of the listed exclusions.
In 1996, UE petitioned PERB to conduct a representation election among the stipulated bargaining unit of teaching and

research assistants. The University submitted to PERB a list of eligible voters, i.e., a list of current teaching and research assistants included in the unit. The voter list did not include law research assistants assigned to work for faculty members. The record does not demonstrate that UE objected to the exclusion of this group of law research assistants. Following the election, UE was certified as the unit's exclusive bargaining representative on May 6, 1996.

The ALJ noted UE and BOR have negotiated successive bargaining agreements since 1996 and, despite an occasional question arising about those in the unit, they have not treated law research assistants who work for faculty members as included. The ALJ observed:

> As of fall 2017, the law school had approximately 470 students and sixty faculty members. For the 2017-18 academic year, it had 119 law research assistants assigned to work for faculty members. In the absence of these research assistantships, the University would not hire 119 employees to assist faculty members in the capacity of a law research assistant.

The ALJ noted Petitioners were students at the University of Iowa College of Law who hold twenty-five percent appointments as law research assistants assigned to work for faculty members.

> Upon acceptance to the University's law school, Petitioners were all guaranteed, but not required to accept, an appointment as a law research assistant in the second and third year of law school.
> Along with their acceptance letter, Petitioners were provided information regarding their specific research assistant appointment. The position was described as being "primarily intended as learning experiences that contribute to the student's progress toward a program of study." The provided information also informed them the assistantship would provide an opportunity to enhance their legal education through professional training as legal employees, add experience to their resume, receive mentoring and form lasting professional relationships with law school faculty. Petitioners were informed that no academic credit is earned for working as a quarter-time research assistant to a faculty member.
> Upon acceptance to the University, Petitioners were awarded financial aid packages. They were provided scholarships to cover nonresident tuition costs for their first year of law school. In their second and third year, however, Petitioners were informed their

scholarship award would only cover resident tuition cost. To make up the difference between nonresident to resident tuition rate, Petitioners were guaranteed a research assistant position as part of their financial aid package. This position would qualify them for resident tuition in the second and third year of law school under a [BOR] policy that treats all nonresident students who work as quarter-time research assistants as resident students for tuition purposes. Thus, the amount of the financial aid Petitioners received in the second and third year of law school was based on their acceptance of the research assistant position. By accepting their guaranteed assistantships, Petitioners were assessed resident tuition. For the 2017-18 academic year, the yearly resident tuition was $23,650 and the nonresident tuition was $42,390. The Petitioners' guaranteed appointment provided them with a tuition reduction of about $9370 per semester or $18,740 per academic year.

Available research assistant positions are advertised on the University's career website. Students are able to apply for positions with faculty members that teach in their legal area of interest. However, in instances where the University guaranteed a position but the student is unable to secure one, the University creates a position and pairs the student with a faculty member. In their positions as law research assistants, Petitioners perform tasks such as conducting legal research on various topics, compiling research findings in legal memoranda, checking legal citations and assisting in preparation of presentations on legal topics. The specific work that Petitioners perform is directed by their assigned faculty members.

For their work as quarter-time law research assistants, Petitioners are provided salary compensation in the amount of $1087.50 per semester, paid $217.50 monthly. Petitioners are expected to work ten hours a week during the academic year and required to report their hours through the University's time-reporting system. In instances when a law research assistant does not meet the ten-hour weekly requirement, the student is still paid at the quarter-time appointment salary rate. Furthermore, as long as the student is classified as a quarter-time law research assistant, the student continues to qualify for the [BOR]'s resident tuition reduction. In instances when a quarter-time research assistant fails to work a minimum of ten hours a week, the University has the option to require the student to pay the additional tuition. However, it does not appear the University has ever exercised this option once the tuition reduction is granted.

The ALJ concluded Petitioners were "not categorically included or excluded by the wording of the unit description." "Instead, the unit language dictates that

quarter-time law research assistants 'who provide services to the University in exchange for salary compensation' are included in the unit as long as the primary purpose of their research assistantship does not fall under one of the listed exclusions."

The parties disagree whether Petitioners "provide services to the University." Petitioners read the phrase broadly and assert their work for the University is plainly encompassed within the inclusion language. The BOR asserts COGS and the University had a specific understanding of the phrase, which was intended to differentiate between law research assistantships that were created to fulfill a business need of the University, i.e., the University needs employees in those positions, from the rest of law research assistantships that were created to benefit the student, such as through financial aid packages, learning experiences, or academic credit. The parties also disagree whether the 1(a)-financial-aid and 1(b)-learning-experiences exclusions apply to Petitioners. There is no disagreement Petitioners do not receive academic credit and exclusion 1(c) is not applicable.

The ALJ concluded:

> Ambiguity exists specifically regarding the meaning of the phrase "provide services to the University" as it was contemplated by the parties to the stipulation in 1993. Furthermore, evaluating the applicability of the exclusion categories to this group of research assistants requires looking beyond the unit description in order to determine the primary purpose of their appointments. Thus, Petitioners' inclusion in the unit requires consideration of other factors which might be probative to whether quarter-time law research assistants assigned to work for faculty members are within the determined unit.

After considering relevant factors and historical context, the ALJ found the Petitioners were not within the existing bargaining unit of graduate and professional students employed by the University of Iowa as teaching and research assistants. The proposed decision of the ALJ recommended dismissing the petition for unit clarification.

Petitioners appealed to PERB. After considering the matter, PERB concluded:

> The record demonstrates that the primary purpose of these law research appointments is to provide learning experiences and financial aid. The parties had agreed that law research appointments for these two primary purposes are ineligible for unit inclusion.
> . . . .
> The evidence does not support finding that the law research assistants who work for faculty have been traditionally treated by the parties as within the present bargaining unit. Nor is there evidence of any other factor indicative of their inclusion in the unit. Based on the record, the law research assistants who work for faculty are not and have not been in the presently constituted bargaining unit.

Petitioners then sought judicial review in the district court, which affirmed the PERB ruling.

On appeal, Petitioners continue to press their claim that the plain language of the unit encompasses their services as research assistants assigned to law professors, entitling them to inclusion in the bargaining unit.[5] They assert the

---

[5] At oral argument, the court questioned whether the appeal was moot in light of the Petitioners' completion of their legal studies. *See Homan v. Branstad*, 864 N.W.2d 321, 328 (Iowa 2015) ("Courts exist to decide cases, not academic questions of law. For this reason, a court will generally decline to hear a case when, because of changed circumstances, the court's decision will no longer matter. This is known as the doctrine of mootness."). The Petitioners urged the court to decide the issue under the public-importance exception to the mootness doctrine.

Application of the exception is appropriate "where matters of public importance are presented and the problem is likely to recur." *Id.* at 330 (citation

district court declared the phrase "provide services to the University" to be ambiguous without any explanation, the court found the phrase "contribute to the student's progress toward their graduate of professional program of study" to be ambiguous by considering matters beyond the wording of the present bargaining unit, and even if the wording of bargaining unit is ambiguous, this court should conclude Law Research Assistants who work for faculty are unambiguously included in the bargaining unit.

PERB argues its decision is consistent with the agency's prior practice or precedents and the analysis "reveals that the Law Research Assistant at issue is and was excluded from the unit." Intervenor BOR has also filed a brief in support of the district court's ruling.

## II. Scope and Standard of Review.

Judicial review of agency decisions is governed by Iowa Code section 17A.19(10) (2020). The court "may grant relief if the agency action has prejudiced the substantial rights of the petitioner, and the agency action meets one of the enumerated criteria contained in section 17A.19(10)(a) thru (n)." *Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 255–56 (Iowa 2012) (citation omitted). "On our review of the district court's decision, we apply the standards of chapter 17A to determine if our conclusions are the same as those of the district court. If so, we affirm;

---

omitted). In determining whether we should apply the exception, we consider four factors: "(1) the private or public nature of the issue; (2) the desirability of an authoritative adjudication to guide public officials in their future conduct; (3) the likelihood of the recurrence of the issue; and (4) the likelihood the issue will recur yet evade appellate review." *Id.* (citation omitted). While a close question, we will decide the issue on the merits.

otherwise, we reverse or otherwise modify." *Winnebago Indus., Inc. v. Haverly*, 727 N.W.2d 567, 571 (Iowa 2006).

Petitioners allege the agency action is invalid as an "[a]ction other than a rule that is inconsistent with the agency's prior practice or precedents, unless the agency has justified that inconsistency by stating credible reasons sufficient to indicate a fair and rational basis for the inconsistency." *See* Iowa Code § 17A.19(10)(h).

> The intent of paragraph (h) is not to prohibit any change in practice or procedure, but rather, the rule requires "consistency in reasoning and weighing of factors leading to a decision tailored to fit the particular facts of the case." Thus, "an agency's failure to conform to its prior decisions[,] or furnish sufficient reasoning from which to distinguish them, may give rise to a reversal under [chapter 17A]."

*Off. of Consumer Advoc. v. Iowa Utils. Bd.*, 770 N.W.2d 334, 341–42 (Iowa 2009) (internal citations omitted). Under section 17A.19(10)(h), an agency action may be overturned when it is unreasonable, arbitrary, capricious, or an abuse of discretion. *Id.* at 341. The burden of demonstrating the required prejudice and the invalidity of agency action is on the party asserting invalidity. Iowa Code § 17A.19(8)(a).

**III. Discussion.**

Petitioners argue PERB's ruling is unreasonable, arbitrary, capricious, and an abuse of discretion. PERB asserts its interpretation that law research assistants assigned to faculty are excluded from the class is consistent with its prior practice or precedents. The district court agreed with PERB.

"An agency's action is 'arbitrary' or 'capricious' when it is taken without regard to the law or facts of the case. Agency action is 'unreasonable' when it is

'clearly against reason and evidence.'" *Soo Line R.R. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 688–89 (Iowa 1994) (internal citations omitted)). "An abuse of discretion occurs when a ruling rests on grounds or reasons clearly untenable or unreasonable." *Schoenfeld v. FDL Foods, Inc.*, 560 N.W.2d 595, 598 (Iowa 1997). "[A]buse of discretion is synonymous with unreasonableness, and involves lack of rationality, focusing on whether the agency has made a decision clearly against reason and evidence." *Id.* (citation omitted).

*A. Interpretation of bargaining unit language.* The task is to determine whether the position of law research assistant assigned to faculty is encompassed by the wording of the present bargaining unit description. When interpreting an agreement, we look at the words chosen to determine "what meanings are reasonably possible" and, if the terms are ambiguous, to choose among reasonable meanings. *Walsh v. Nelson*, 622 N.W.2d 499, 503 (Iowa 2001) (citation omitted). "[T]he disputed language and the parties' conduct must be interpreted 'in the light of all the circumstances' regardless of whether the language is ambiguous." *Id.* (citation omitted).

> This idea is expressed in Restatement (Second) of Contracts section 212 comment b:
>> Any determination of meaning or ambiguity should only be made in the light of the relevant evidence of the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties. But after the transaction has been shown in all its length and breadth, the words of an integrated agreement remain the most important evidence of intention.
>
> In short, although other evidence may aid the process of interpretation, the words of the contract remain the key to determining whether the . . . terms are ambiguous.

*Id.* (emphasis omitted); *accord United Elec., Radio & Mach. Workers of Am. v. Iowa Pub. Emp. Rels. Bd.*, 928 N.W.2d 101, 109–11 (Iowa 2019) (noting if reasonable minds could differ as to the meaning of a statutory phrase, that phrase is ambiguous, and explaining interpretive tools for ambiguous statutory terms include consulting dictionary definitions, legislative history, context and "[t]he circumstances under which the statute was enacted" (alteration in original) (citation omitted)).

The disputed terms of the bargaining unit at issue here are italicized:

INCLUDED: All currently enrolled graduate and professional students with a 25% or more appointment (i.e. teaching at least one course and/or providing service for at least [ten] hours a week) employed as: Teaching Assistants (FT19), Research Assistants (FR19), and Law Research Assistants (FL19) *who provide services to the University* in exchange for salary compensation.

EXCLUDED: 1. Research Assistants (FR19 or FL19) whose appointments are (a) *primarily a means of financial aid which do not require the individuals to provide services to the University*, or (b) which are *primarily intended as learning experiences which contribute to the students' progress toward* their graduate or professional program of study.

While Petitioners' brief initially focuses on the purported inadequacies of the district court's reasoning, the proper focus is on whether PERB's interpretation was "inconsistent with the agency's prior practice or precedents." Iowa Code § 17A.19(10)(h). If PERB's interpretation is inconsistent with its precedents, the district court reviews whether the agency provided "credible reasons sufficient to indicate a fair and rational basis for the inconsistency." *Id.*

PERB reasoned:

In this case, the question presented by Champion's clarification petition is whether quarter-time law research assistants who work for faculty members are included within the bargaining unit.

Our first task is to discern whether the unit description unambiguously includes or excludes this position. If the text of the description does not resolve the question, then we look to other probative factors.

The student's quarter-time or more appointment is an unambiguous requirement for unit inclusion and is not at issue in this case. However, the law research assistants' status is not resolved by an examination of the remaining bargaining unit description. We agree with the ALJ's determination that the unit description does not unambiguously include or exclude the law research assistants who work for faculty.

At first blush, a literal reading of the unit description that includes students who "provide services to the University in exchange for salary compensation" is seemingly unambiguous. However, what constitutes "services" that qualify is capable of differing interpretations as demonstrated by the parties' dispute. The students assert they provide qualifying services for the law professors while the [BOR] disagree and contend the students' services do not fulfill a business need of the University to constitute qualified services.

The parties also dispute the purpose of the students' appointments and whether the unit description excludes Champion, the Intervenors, and other law research assistants who work for faculty. Based on the listed exclusions, we are unable to discern whether the law research assistants are excluded without some additional inquiry or examination of their meaning and applicability to certain assignments. Overall, the description of the bargaining unit does not unambiguously include or exclude law research assistants who work for faculty and requires our examination of other probative factors.

Petitioners' claim law research assistants assigned to faculty unambiguously provide "services" to the University[6] and that the purpose of those services is irrelevant. This claim ignores the agreement's express exclusions. PERB's interpretation that the unit description does not unambiguously include or exclude law research assistants who work for faculty is not "clearly against reason," untenable, or unreasonable.

---

[6] We also note ambiguity arises in the many dictionary definitions of services, which the Petitioners themselves note—"the only dictionary definitions of 'service' that are possibly applicable to the present context are . . . ."

PERB next considered "other factors which might be probative of whether the position falls within the determined unit, including such matters as whether it has traditionally been treated as such, [and] whether similar positions or persons who perform similar duties are included in the unit." *E. Iowa Cmty. Coll.*, 82 PERB 2110 at *4. "[T]he focus is on those matters probative of whether the position *is* and *has been* in the bargaining unit, not whether it should be or should have been placed in the bargaining unit." *Id.* PERB found,

> Other probative factors resolve the ambiguities and support the [BOR]'s position that the law research assistants who work for faculty are excluded from the bargaining unit. First, both parties have treated these law research assistants as students who are excluded from the bargaining unit. Second, evidence establishes that the primary purpose of these appointments is to provide the students with learning opportunities or to provide the appointment as part of financial aid.
>
> The parties have historically and unequivocally treated the law research assistants who work for faculty as students excluded from the bargaining unit. From the beginning of the unit determination in 1994, the parties agreed that law research assistants who worked at the library, bookstore, or computer lab were unit eligible because they provided a service that would have required the University to hire an employee instead. They also agreed the law research assistants who worked for faculty were excluded based on one or more of the exceptions. The parties followed this same treatment of unit eligibility of law research assistants with the official voter list that was submitted to PERB in 1996. In subsequent communications, the University maintained this position without objection from UE. In 2001, the University reiterated its understanding and this same interpretation of the law research assistants in response to a grievance filed by UE. UE did not pursue the grievance alleging certain law students did not receive the negotiated salary. The parties have consistently treated the law research assistants who work for faculty as unit ineligible.
>
> As the record establishes, another probative factor is that the primary purpose for these particular law research appointments is to provide a learning experience for the students or to provide the appointments as part of a structured financial aid package. The University addressed these two purposes and the unit exclusion of the law research assistants in its communication to UE on October 3, 1996. When Champion and the Intervenors were accepted to the

University and offered research assistant positions, they were informed their appointments were "primarily intended as learning experiences." Their financial aid packages were structured to enable the students to pay resident tuition based on their appointments. Champion and the Intervenors agreed they accepted their appointments in order to receive the tuition reduction, which amounted to approximately $18,740 for each in the 2017–18 academic year. The record demonstrates that the primary purpose of these law research appointments is to provide learning experiences and financial aid. The parties had agreed that law research appointments for these two primary purposes are ineligible for unit inclusion.

We understand Champion and the Intervenors' arguments as to the benefit of service they provide to the University and the similarity of work they perform in comparison to other students in the unit. However, *their arguments are relevant to a unit amendment proceeding and are misplaced in this unit clarification proceeding* when the evidence overwhelmingly establishes their positions were historically, specifically, and unequivocally excluded from the unit.

(Emphasis added.)

Petitioners assert "[i]t is indisputable" that the exclusions do not apply to the law research assistants assigned to law professors. This statement is belied by the extensive record before us. PERB's interpretation that law research assistants who work for faculty are not and have not been in the presently constituted bargaining unit is not inconsistent with its prior practice or precedents. We thus affirm the district court's ruling upholding PERB's decision.

**AFFIRMED.**